**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

IOI PARK AVENUE

NEW YORK, NEW YORK IOI78

(212) 808-7800

WASHINGTON, DC

CHICAGO, IL

STAMFORD, CT

PARSIPPANY, NJ

———

BRUSSELS, BELGIUM

———

AFFILIATE OFFICES

MUMBAI, INDIA

FACSIMILE

(212) 808-7897

www.kelleydrye.com

November 12, 2010

DIRECT LINE  (212) 808-7811

EMAIL  nmerki@kelleydrye.com

**VIA ECF**
Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

     Re:     *Berkshire Settlements, Inc. v. Ashkenazi,* No. 09 CV 0006 (FB) (JO)

Dear Judge Block:

     We represent defendant John Hancock Life Insurance Company (U.S.A.) ("John Hancock"), and write pursuant to Rule 2A of Your Honor's Motion Practice Rules to request a pre-motion conference to advise the Court of the basis for John Hancock's anticipated motion for summary judgment dismissing the Fifth Amended Complaint in its entirety.

**Facts**

     On or about June 13, 2005, John Hancock issued a $5 million life insurance policy (the "Policy") on the life of then 85 year old defendant Mali Halpert ("Halpert"). The Policy was issued to defendant Alexander Ashkenaki ("Ashkenazi") as the sole trustee of defendant The Halpert–Alexander Trust (the "Trust"). This Trust was supposedly created by Ms. Halpert as grantor for the benefit of her daughter, the sole Trust beneficiary.

     On March 4, 2008, Plaintiffs contracted with Ashkenazi to purchase the Policy from the Trust for $900,000. Plaintiffs never met or spoke to Ashkenazi or Halpert; they dealt with defendant Cambridge who they believed was authorized to broker the sale of the Policy for Halpert and Ashkenazi. John Hancock was not involved in the sale transaction; the sale was, in the words of Berkshire's principal, "really not any of their business."

     Prior to the sale, John Hancock notified Ashkenazi that the Policy would lapse on May 12, 2008 if the required premiums were not received by that date. Plaintiffs learned this payment was due, and knew the policy would lapse if the premiums were not timely paid. Instead of paying the premium directly, Plaintiffs asked Cambridge to make sure that Ashkenazi paid the premium in advance of the closing.

     On or about May 9, 2008, two checks purporting to be premium payments totaling $127,000 were received by John Hancock. On May 19, 2008, Plaintiffs telephoned a John Hancock 800 number and were told the John Hancock system showed the policy was paid up to date.

**KELLEY DRYE & WARREN** LLP

Honorable Frederic Block
November 12, 2010
Page Two

On May 21, 2008, Plaintiffs wired Ashkenazi $900,000 for the Policy. On or about June 2, 2008, the $127,000 in checks John Hancock had received on May 9 from Ashkenazi, bounced, and the Policy lapsed, according to its terms, effective as of May 12. John Hancock so notified the Plaintiffs, who were Ashkenazi's assignees. Plaintiffs, therefore, had paid Ashkenazi $900K for a Policy that had lapsed. Premiums received from Plaintiffs after the May 12 lapse were later returned.

Ashkenazi and the money are gone; he has not appeared and is in default.

On January 5, 2009, plaintiffs filed their original Complaint in this action against Ashkenazi, the Trust, Cambridge and Halpert -- not John Hancock. After Ashkenazi defaulted, plaintiffs amended to add John Hancock. Plaintiffs have made no effort to enforce the default against Ashkenazi.

Discovery has since revealed that the entire sale transaction was a fraud engineered by Ashkenazi from the outset. Halpert admitted she signed a page from a life insurance application that she did not fill out– that is pretty much it. She testified at her deposition that she had never heard of Ashkenazi, the Trust, or the trust beneficiary and that she does not know what the Trust in this case is. Halpert did not pay any premiums, or fund the Trust. The Trust document relied on by Plaintiffs in their Complaint, which is a faxed copy of unknown origin, names "Malka Schwartz, daughter of Mali Halpert" as the beneficiary of the Trust. Halpert does not have a daughter, and does not know anyone named Malka Schwartz. Halpert also did not sign the contract for sale of the Policy from the Trust to Plaintiffs, did not sign any of the ancillary sale documents, and she knows nothing about the Policy or its alleged sale. Ms. Halpert's signatures were forged on various transaction documents. Plaintiffs admit they would never have gone through with the sale without her consent, or if they knew any of the signatures were forgeries. Halpert has disclaimed any interest in this case and defaulted after her deposition.

It also turns out Cambridge was not the broker Plaintiffs believed it to be. Cambridge admits it also never met or spoke to Halpert or Ashkenazi – though they forwarded the forged documents on to Plaintiffs. Unbeknownst to Plaintiffs, Cambridge dealt with a third party broker (recently added defendant Global), the only party who actually spoke to Ashkenazi about the sale. No one can verify Ashkenazi signed any of the sale or Trust documents.

**Plaintiffs' Claims Against John Hancock**

Plaintiffs seek to recover from John Hancock in one of two alternative forms: (1) they seek to have the Policy reinstated, which would allow them the benefit of their bargain with Ashkenazi - - even though they now know the Policy was obtained and sold to them

KELLEY DRYE & WARREN LLP

Honorable Frederic Block
November 12, 2010
Page Three

fraudulently; or (2) they seek to recover the $900,000 they paid Ashkenazi on the grounds that
John Hancock, failed to alert them that the Policy lapsed prior to its purchase.

## A.    The Policy Lapsed According to Its Terms

There is no question of fact that Ashkenazi's check bounced, and premium was
not paid when due.  Plaintiffs, as assignees of the Policy, stand in the shoes of Ashkenazi, their
assignor.  *See Kaplan v. Equitable Life Assur. Soc.*, 177 Misc. 792, 795, 31 N.Y.S.2d 972, 975
(Sup. Ct. Bronx. Cty. 1940).  Plaintiffs bought what Ashkenazi had – a lapsed policy.  Plaintiffs,
as assignees, have no more right to have the lapsed Policy reinstated than Ashkenazi would have
had.  *See Kaplan,* 177 Misc. at 795, 31 N.Y.S.2d at 975.  "It is axiomatic that a check given in
payment of an underlying obligation constitutes conditional payment and the obligation is
discharged if the check is dishonored."  *Sedlacek v. Dryden Mutual Ins. Co.*, 266 A.D.2d 768,
768-69, 698 N.Y.S.2d 793, 794 (3d Dep't 1999) (granting insurer's motion for summary
judgment dismissing complaint); *Wahrman v. Equitable Life Assur. Soc. Of the United States,*
166 Misc. 65, 66, 1 N.Y.S.2d 331, 331 (Sup Ct., N.Y. Cty. 1937).

Plaintiffs allege the lapse is ineffective because Hancock did not notify them of
the premium obligations and did not allow the full grace period to run before the Policy lapsed.
Neither argument raises a question of fact.  The assignment of the Policy imposed no obligation
on Hancock to provide Plaintiffs with previously sent notices.  This exact argument has been
rejected by the courts.  *See Kaplan,* 177 Misc. at 795, 31 N.Y.S.2d at 975 ("The defendant did
not, at the same time, give notice to the assignee, the plaintiff herein, for the obvious reason that
the defendant did not have notice of the assignment of the policy.").  When an insurer gives
notice to the proper party, as was the case here, "it is unnecessary to consider the other
arguments advanced by the plaintiff that the lapsing of the policy was wrongful, and therefore
waived the tender of premium."  *Kaplan,* 177 Misc. at 796, 31 N.Y.S.2d at 976.  Plaintiffs'
argument that the notices are ineffective does not raise a question of fact.  The Court can
construe the Policy and the notices as a matter of law.  John Hancock should be granted
summary judgment declaring the Policy lapsed and that Plaintiffs are not entitled to
reinstatement.

## B.    Plaintiffs Are Not Entitled to Reinstatement of the Policy

Even if the Policy had not lapsed, the Policy would be void *ab initio* by reason of
the fraud, and Plaintiffs could not be deemed the owner since there was no lawful sale for at least
the following reasons:

1. The Trust did not comply with N.Y. E.P.T.L. §13-3.3 and was invalid as a
matter of law, and, therefore, could not lawfully own or sell the Policy. *See Sun Life Assurance
Company of Canada v. Gruber*, 2009 WL 1560829 at *1-2 (2d Cir. June 4, 2009).

KELLEY DRYE & WARREN LLP

Honorable Frederic Block
November 12, 2010
Page Four

The Policy was void as a matter of law because a Trust that never existed lacks the capacity to acquire or transfer rights by contract or otherwise. *See Fasano v. DiGiacomo*, 49 A.D.3d 683, 685, 853 N.Y.S.2d 657, 659 (2d Dep't 2008) (granting defendant's motion for summary judgment and holding that where no valid trust was created "any transfer in to or out of the putative trust…was null and void."). *International Sport Divers Association, Inc. v. Marine Midland Bank,* 25 F. Supp.2d 101, 112 (W.D.N.Y. 1998)(citations and internal quotations omitted); *See 183 Holding Corp. v. 183 Lorraine St. Associates,* 251 A.D.2d 386, 386-87, 673 N.Y.S.2d 745, 746 (2d Dep't 1998). Accordingly, the Policy, the Trust and the sale and assignment are void *ab initio* and the Policy cannot be reinstated much less assigned to Plaintiffs as a matter of law.

2. The Policy is also void *ab initio*, and, therefore cannot be reinstated because N.Y. Insurance Law § 3205(c) requires that the insured "applies for or consents in writing to the making of the contract." Halpert did not "appl[y] for or consent" to the coverage as required by § 3205(c), because she did not know it would be owned by the phony trust set up by Ashkenazi.

3. It is undisputed that Halpert's signature on the contract for sale of the Policy to plaintiffs and other transactional documents are forgeries. Ashkenazi's own signatures cannot be confirmed. Accordingly, the sale contract is void *ab initio. See Kwang Hee Lee v. ADJMI 936 Realty Assoc.,* 46 A.D.3d 629, 631, 847 N.Y.S.2d 234, 236 (2d Dep't 2007) (granting motion for summary judgment declaring a forged sale contract void *ab initio*); *Orlosky,* 230 A.D.2d 401, 403, 657 N.Y.S.2d 840, 842 (3d Dep't 1997).

4. The new owner of the Policy would not and could not have an insurable interest in the life of the insured as N.Y. Ins. Law §3205(b)(2) requires.

**C.        Plaintiffs' Negligence Claim For Recovery of The $900,000 From
            John Hancock Also Is Meritless**

Plaintiffs' negligence claim, based on the allegation that they purchased the Policy in reliance upon on a conversation between Berkshire and a back office employee in Hancock's customer service center, who told them the Policy was in force, also does not present a question of fact, and fails as a matter of law for the following reasons:

1. Hancock owed Plaintiffs no duty that could support a negligent misrepresentation claim because John Hancock was not in privity with Berkshire and had no special relationship with Berkshire. *See Transamerica Insurance Finance Corp. v. Fireman's Fund Insurance Company,* 1992 WL 350800 at * 6-7 (S.D.N.Y. Nov.19, 1992) (granting summary judgment dismissing premium finance lender's claim against insurance company for negligent misrepresentation of coverage).

KELLEY DRYE & WARREN LLP

Honorable Frederic Block
November 12, 2010
Page Five

      2.  At the time of Berkshire's phone call, the bank had not told Hancock that Ashkenazi's checks had bounced.  Hancock, therefore, was not negligent.  An insurer is not deemed to have knowledge that a premium is unpaid until it receives notice from the bank.  *See American Crown Life Ins. Co. v. Dickson,* 748 F. Supp. 184, 186-88 (S.D.N.Y. 1990).  *See also Tenet Healthcare Ltd., v. United Health Plans of Texas, Inc.,* 2008 WL 5101558 at * 16 (S.D. Texas Nov. 26, 2008) (granting summary judgment to a defendant HMO and holding that "as a matter of law, it was not unreasonable for [defendant] to inform [plaintiff what] its records showed.")

      3.  Hancock had no duty to affirmatively investigate the sufficiency of its policyholder's checks.  Hancock provides what information it has; it does not purport to tell the hundreds of customers that call each day information they already have.  Who knows better than the policy owner if his checks are good?  This would mean every time a policy owner (or its designee) called up to find out when a payment was due or how much was owed, John Hancock would have to call the bank and confirm the policy owner's checks were good.  This burden is not only unreasonable it is preposterous.

      4.  The negligence claim also fails as a matter of law because Plaintiffs' negligent disregard of information at their disposal that should have alerted them to Ashkenazi's fraud precludes finding reasonable reliance or proximate cause.  Plaintiffs effectively did no due diligence.  Judge Leval granted the defendant insurer summary judgment on these grounds in the *Transamerica* case.  Ashkenazi's intervening fraud, moreover, also cuts off the negligence claim as a matter of law.  Ashkenazi's fraud also is an "intervening intentional act" which, as a matter of law, severs Hancock from liability because it was not a "normal or natural consequence" of Hancock's limited communications with Berkshire.  *See Transamerica*, 1992 WL 350800 at * 9.

      Accordingly, John Hancock intends to file a motion for summary judgment dismissing the Complaint and granting its counterclaim for declaratory judgment.

                       Respectfully submitted,
                       */s/ Neil Merkl*
                       Neil Merkl

cc:  counsel of record (via ECF)
     Joseph Grob, Esq., counsel to Mali Halpert (via email)
     Robert Rimberg, Esq., counsel to Mali Halpert (via email)
     Ira Lipsius, Esq., counsel to Alexander Ashkenazi in other pending EDNY cases (via email)
     Alexander Ashkenazi (by U.S. mail)