Neil Merkl
Eric B. Post
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
Email: nmerkl@kelleydrye.com
        epost@kelleydrye.com

*Attorneys for Defendant/Counterclaimant/Crossclaimant*
*John Hancock Life Insurance Company (U.S.A.)*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BERKSHIRE SETTLEMENTS, INC., <br> A Georgia Corporation, and <br> CHURCH STREET NOMINEES LTD. <br> An Isle of Man Corporation, and <br> ASSURED FUND, <br> A Cayman Islands Corporation, <br><br>        Plaintiffs, <br><br>        v. <br><br> ALEXANDER ASHKENAZI, <br> An Individual and as Trustee for <br> HALPERT ALEXANDER TRUST, <br> A New York Trust, <br> MALI HALPERT, an Individual, <br> JOHN HANCOCK LIFE INSURANCE <br> COMPANY, a Massachusetts Corporation, <br> CAMBRIDGE LIFE SETTLEMENTS, LLC <br> A New York Corporation, GLOBAL LIFE <br> SETTLEMENTS, INC. a New York <br> Corporation, and JOEL ECKSTEIN, An <br> Individual, <br><br>        Defendants. | No:  09-CV-00006 (FB) (JO) <br><br><br> **DEFENDANT JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.)'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY'S FEES** |

# TABLE OF CONTENTS

**Page**

BACKGROUND AND PROCEDURAL HISTORY ..................................................................... 1

SUMMARY OF ARGUMENT ................................................................................................... 3

ARGUMENT .............................................................................................................................. 5

I.  PLAINTIFFS CANNOT RECOVER ATTORNEY'S FEES UNDER THE "AMERICAN RULE" AS APPLIED UNDER NEW YORK LAW ................................. 5

   A.  There is No Legal Basis For Awarding Attorney's Fees ........................................... 5

   B.  There Is No Basis for Allowing An Exception to The  American Rule In This Case .................................................................................................................. 6

   C.  There Is No Bad Faith Here .................................................................................... 11

      1.  John Hancock Did Not Act in Bad Faith ..................................................... 11

      2.  Plaintiffs Never Alleged Bad Faith .............................................................. 14

II.  ATTORNEY'S FEES ARE NOT RECOVERABLE AS  "CONSEQUENTIAL DAMAGES" AS A MATTER OF LAW .................................................................... 14

III.  PLAINTIFFS' MOTION SHOULD ALSO BE DENIED BECAUSE PLAINTIFFS FAILED TO PROVIDE AN AMOUNT OR ESTIMATE OF FEES INCURRED ........... 17

CONCLUSION ......................................................................................................................... 18

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aetna Cas. & Sur. Co. v. Dawson*,
    84 A.D.2d 708, 444 N.Y.S.2d 10 (1st Dep't 1981),
    *aff'd*, 56 N.Y.2d 1022 (N.Y. 1982)..............................................................8, 9, 10

*Amoco Oil Co. v. Hartford Accident & Indem. Co.*,
    No. 93 Civ. 7295 (SS), 1996 WL 455015 (S.D.N.Y. Aug. 12, 1996) ....................10

*Bi-Economy Market, Inc. v. Harleysville Ins. Co. of New York*,
    10 N.Y.3d 187 (N.Y. 2008) ...........................................................................15, 16, 17

*Brassil v. Maryland Cas. Co.*,
    210 N.Y. 235 (N.Y. 1914) ......................................................................................7

*Brooklyn 13th Street Holding Corp. v. Nextel of N.Y. Inc.*,
    No. 11-CV-1048 (CBA)(RLM), 2011 WL 6945862 (E.D.N.Y. Dec. 30, 2011)....................14

*Chernish v. Mass. Mut. Life Ins. Co.*,
    No. 5:08-CV-0957 (GHL), 2009 WL 385418 (N.D.N.Y. Feb. 10, 2009) ...............16

*Cowan v. Codelia*,
    50 Fed. App'x 36 (2d Cir. 2002)................................................................................8

*Employers Mut. Cas. Co. v. Key Pharms.*,
    75 F.3d 815 (2d Cir. 1990)..............................................................................8, 9, 10

*Exim, Inc. v. Innogarant, LLC*,
    No. 10 Civ. 5271 (CM), 2011 WL 240130 (S.D.N.Y. Jan. 19, 2011) ....................10

*Fed. Deposit Ins. Corp. v. Nat'l Sur. Corp.*,
    425 F. Supp. 200 (E.D.N.Y. 1977) ........................................................................10

*Fulton Boiler Works, Inc. v. Am. Motorists Ins. Co.*,
    No. 5:06-CV-1117, 2010 WL 1257943 (N.D.N.Y. Mar. 25, 2010) ........................14

*Goldmark, Inc. v. Catlin Syndicate Ltd.*,
    No. 09-CV-3876 (RRM)(RER), 2011 WL 743568 (E.D.N.Y. Feb. 24, 2011) .......16

*Handy & Harman v. Am. Int'l Group, Inc.*,
    No. 0115666/2007, 2008 WL 3999964 (Sup. Ct. N.Y. Cty. Aug. 25, 2008) ...................15, 16

*Harriprashad v. Metro. Prop. & Cas. Ins. Co.*,
    No. 09-CV-3105 (ENV)(ALC), 2011 WL 6337699 (E.D.N.Y. Nov. 17, 2011), *report
    and recommendation adopted by* 2011 WL 6370039 (E.D.N.Y. Dec. 19, 2011)..........6, 15, 16

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Haym Solomon Home For The Aged, LLC v. HSB Group, Inc.*,
No. 06-CV-3266(JG)(JMA), 2010 WL 301991 (E.D.N.Y. Jan. 20, 2010) ............................16

*Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*,
252 F.3d 608 (2d Cir. 2001)...........................................................................................9, 11

*Iannone v. Frederic R. Harris, Inc.*,
No. 93 Civ. 4865 (JGK) (JCF), 1997 WL 12809 (S.D.N.Y. Jan. 13, 1997).....................17, 18

*Liberty Surplus Ins. Corp. v. Segal Co.*,
420 F.3d 65 (2d Cir. 2005).............................................................................. *passim*

*Mighty Midgets, Inc. v. Centennial Ins. Co.*,
47 N.Y.2d 12 (N.Y. 1979) ............................................................................... *passim*

*New England Mut. Life Ins. Co. v. Johnson*,
155 Misc. 2d 680, 589 N.Y.S.2d 736 (Sup. Ct. N.Y. Cty. 1992) .......................................9, 10

*New York Univ. v. Cont'l Ins. Co.*,
87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763 (N.Y. 1995) .................................. *passim*

*Panasia Estates, Inc. v. Hudson Ins. Co.*,
10 N.Y.3d 200 (N.Y. 2008) .....................................................................................15, 16, 17

*Quick Response Commercial Div., LLC*, No. 1:09-cv-00651,
2009 WL 3334600 (N.D.N.Y. Oct, 14, 2009) ........................................................................16

*Sinclair v. City of Rochester*,
No. 07-CV-6277, 2007 WL 3047096 (W.D.N.Y. Oct. 18, 2007) ....................................17, 18

*Sukup v. State*,
19 N.Y.2d 519 (N.Y. 1967) ............................................................................. *passim*

*U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*,
369 F.3d 34 (2d Cir. 2004)....................................................................................................5

*Woodworth v. Erie Ins. Co.*,
No. 05-CV-6344CJS, 2009 WL 1652258 (W.D.N.Y. Jun. 12, 2009), *modified on other
grounds*, 2009 WL 3671930 (W.D.N.Y. Oct. 29, 2009) ......................................................6, 15

*Wurm v. Commercial Ins. Co. of Newark, N.J.*,
308 A.D.2d 324, 766 N.Y.S.2d 8 (1st Dep't 2003) ..........................................................8, 11

**STATUTES**

Fed. R. Civ. P. 54.....................................................................................................................17

Defendant John Hancock Life Insurance Company (U.S.A.) ("John Hancock")

submits this Memorandum of Law in Opposition to Plaintiffs' Motion for Attorney's Fees.  (ECF

No. 243-1 ("Pl. Mem.").)

## Background and Procedural History

On or about June 13, 2005, John Hancock issued a $5 million life insurance policy

(the "Policy") on the life of then 85 year old Mali Halpert to the Halpert Alexander Trust (the

"Trust").  On May 19, 2008, Plaintiff Church Street Nominees Ltd. ("Church Street") purchased

the Policy from the Trust in a life settlement transaction for its principal, the Assured Fund (the

"Fund"), a Cayman Island investment fund.  On June 3, 2008, John Hancock learned that premium

checks it had received from the Trustee prior to the May 19 purchase were returned for insufficient

funds.  (ECF No. 233 at 7.)  John Hancock, therefore, reversed those checks effective as of the day

they were originally credited, and notified Church Street that the Policy had lapsed on May 12,

2008 – i.e. the last day of the contractual grace period.  (Id.)  John Hancock did not credit the

Policy with funds that had been wired by the Fund on May 23 because they were received after the

original May 12 grace period deadline passed.  (Id. at 7, 11-12.)  John Hancock later learned that

the Trust was a sham and Halpert did not consent to the Policy or its sale.  (Id. at 8, 10.)

On January 5, 2009, Berkshire Settlements, Inc. ("Berkshire"), who handled the sale

for Church Street and the Fund, filed the original Complaint in this action against the Trust,

Alexander Ashkenazi individually and as Trustee ("Ashkenazi"), Halpert, and Cambridge Life

Settlements, Inc. ("Cambridge") who together sold the Policy, asserting claims for fraud in the

inducement, breach of contract and conversion in an effort to recover the $900,000 paid for the

lapsed policy.  (ECF No. 1.)  Berkshire did not sue John Hancock and did not seek reinstatement of

the Policy in the original Complaint.  (Id.)  In April 2009, Ashkenazi defaulted.  Berkshire filed a

First Amended Complaint adding a claim against John Hancock for damages for "negligent

misrepresentation" to recover the $900,000 from John Hancock but did not seek reinstatement of the Policy.  (ECF No. 19 ¶¶ 31-36.)

On July 26, 2009, Berkshire filed a Second Amended Complaint, added a new claim against John Hancock for a declaratory judgment that it breached the Policy because it received additional funds before the end of the Policy's grace period; was equitably estopped from asserting that the Policy lapsed; and that its "negligent underwriting" barred it from asserting any defenses. (ECF No. 42 ¶¶ 46-56.)  On September 21, 2009, Church Street joined Berkshire in the filing of a Third Amended Complaint.  (ECF No. 59.)  On February 15, 2010, Plaintiffs filed a Fourth Amended Complaint to add the Fund as a plaintiff.  (ECF No. 110.)

Plaintiffs' operative complaint, the Fifth Amended Complaint filed on June 6, 2010, asserted seven claims: common law fraud against the Trust, Ashkenazi, Halpert, and Global Life Settlements, Inc. ("Global"), another broker involved in the life settlement transaction, and Joel Eckstein ("Eckstein"), an employee of Global; (2) breach of contract against the Trust, Ashkenazi, and Halpert; (3) conversion against the Trust, Ashkenazi, and Halpert; (4) negligent misrepresentation against John Hancock; (5) declaratory judgment against John Hancock; (6) negligence against Global, Eckstein, and Cambridge, and (7) civil conspiracy against Ashkenazi, Halpert, Global, and Eckstein.  (ECF No. 152.)

On November 29, 2011, the Court issued a memorandum and order granting Plaintiffs' motion for summary judgment on their declaratory judgment claim.  (ECF No. 233.) With respect to John Hancock's defense that the Policy was void *ab initio,* the Court stated "there is a serious problem with the procurement of the policy on Halpert's life because it appears that she did not valid[ly] consent to have her life insured by another".  (*Id.* at 8.)  The Court also found that "no New York court has addressed whether the incontestability clause covers arguments like those raised by John Hancock," and "there is merit on both sides", but concluded for Plaintiffs that the incontestability clause barred John Hancock's fraud defense.  (*Id.* at 8-11.)  The Court also held

-2-

that John Hancock's June 3 letter allowing Plaintiffs 10 days to tender a replacement check for the checks their assignor bounced, coupled with the timing of a "completely fortuitous" May 23 payment Plaintiffs had made, prevented the Policy from lapsing, and ordered the Policy reinstated upon payment of back premiums. (*Id.* at 14.) The Court did not reach Plaintiffs' negligence claim which was mooted by the reinstatement of the Policy.

## Summary of Argument

Plaintiffs' motion to recover attorney's fees from John Hancock should be denied because there are no grounds for departing from the American Rule, as applied under New York law: each party to a litigation bears its own attorney's fees absent a statute, agreement, or court rule to the contrary. This well-settled rule has always been applied by the New York courts in life insurance cases, and precludes insureds from recovering attorney's fees incurred in actions against insurers to settle rights under a policy in the same way that it precludes successful insurers from recovering their fees. This is a commercial dispute between an insurer and a hedge fund over a financial transaction. This is no basis for departing from the American Rule.

In an effort to evade the American Rule, Plaintiffs now assert for the first time that John Hancock acted in "bad faith". Plaintiffs themselves never believed this was a bad faith case; the six iterations of their Complaint do not mention "bad faith" – nor did they seek attorney's fees in the claims against John Hancock, although fees were sought against other parties. In any case, there is no evidence of bad faith in the record, and no finding of bad faith in the Court's November 29 decision.

Plaintiffs rely on the New York Court of Appeals' decision in *Sukup v. State of New York* to argue that an insured can recover attorney's fees when it makes an "extraordinary showing" of bad faith by the insurer. First, *Sukup* is inapposite because it addresses an insured's coverage under a worker's compensation policy for defense and indemnity in connection with third party liability for a work related injury. While this case arguably concerns "coverage" under a life

insurance policy in a broad sense, the reality is that Plaintiffs purchased the Policy as an investment. Plaintiffs are not the insureds under the Policy and have no insurable interest in the life of the insured. They faced only a financial loss on an investment; they were never at risk of the type of harm a true insured faces when a liability or worker's compensation insurer disclaims coverage. Plaintiffs were made completely whole by the judgment. They received the full Policy value, and retained the time value of the money they would have paid in premiums while the action was pending. *Sukup* and the policy reasons allowing recovery for attorney's fees in the third party liability insurance setting do not apply here.

Second, even if *Sukup* applies, Plaintiffs are required to demonstrate that John Hancock exhibited "a gross disregard for its policy obligations" – not simply an arguable difference of opinion. They have not done so. Under *Sukup* there remains a strong presumption against bad faith liability. The extraordinary nature of the relief sought here is reflected in the history of cases following *Sukup*. Plaintiffs cite only two trial court decisions in the 45 years since *Sukup* was decided that granted attorney's fees based on that decision. One was a motion for a default judgment where bad faith was uncontested; the other an action where the court held the insurer unlawfully discriminated against the insured. *Sukup* itself did not even award fees.

There was no bad faith here anyway. Plaintiffs focus only on the lapse issue, but ignore the Court's conclusion there was merit on both sides relating to the incontestability issue. (ECF No. 233 at 8.) Nor was there any bad faith breach of the Policy. The Court held that the June 3 letter coupled with the timing of a "completely fortuitous payment" by Plaintiffs prevented the Policy from lapsing – effectively extending the time period allowed by the Policy. (*Id.* at 14.) [1]

Finally, Plaintiffs' alternate theory that attorney's fees may be recoverable as "consequential damages" has no merit. Attorney's fees are not "consequential damages" as a matter of law. This theory also requires a showing of bad faith and there is none. Consequential

damages, moreover, are not recoverable unless they were within the contemplation of the parties at the time of contracting.  Here, there is no evidence the parties contemplated liability for consequential damages or attorney's fees when the Policy was issued in 2005.

## ARGUMENT

### I. PLAINTIFFS CANNOT RECOVER ATTORNEY'S FEES UNDER THE "AMERICAN RULE" AS APPLIED UNDER NEW YORK LAW

#### A. There is No Legal Basis For Awarding Attorney's Fees

New York follows the "American Rule" that each party bears its own attorney's fees absent a statute, agreement, or court rule to the contrary.  *See U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004).  As the New York Court of Appeals held in *Mighty Midgets, Inc. v. Centennial Insurance Company*, 47 N.Y.2d 12, 22 N.Y. (1979):

> In contrast with other legal systems, such as that in Great Britain, it has now long been the universal rule in this country not to allow a litigant to recover damages for the amounts expended in the successful prosecution or defense of its rights . . . Though not exempt from criticism, this practice reflects a fundamental legislative policy decision that, save for particular exceptions . . . or when parties have entered into a special agreement . . . it is undesirable to discourage submission of grievances to judicial determination and that, in providing freer and more equal access to the courts, the present system promotes democratic and libertarian principles [citations omitted] . . .   Furthermore, it is not inherently unfair to disallow recovery for litigation fees to a prevailing party when these would not be assessed against an unsuccessful one.

(citations omitted).  *See also U.S. Fid. & Guar. Co.*, 369 F.3d at 74.  In *New York University v. Continental Insurance Company*, 87 N.Y.2d 308, 315-17, 324 (1995), the New York Court of Appeals reversed the lower court, and dismissed a demand for attorney's fees at the pleading stage in an insurance coverage action, notwithstanding allegations that the breach of contract was fraudulent, reckless, and vindictive, and violated the duty of good faith and fair dealing.  The Court held an insured may not recover attorney's fees "incurred in bringing an affirmative action against

---

[1] Plaintiffs alternative negligence claim against John Hancock also would not have allowed attorney's fees.

an insurer to settle its rights under the policy." *Id.* at 324.  Thus, "[u]nder New York law, it is well

settled that an insured cannot recover his legal expenses in a controversy with a carrier over

coverage, even though the carrier loses the controversy and is held responsible for the risk."

*Liberty Surplus Ins. Corp. v. Segal Co.*, 420 F.3d 65, 67 (2d Cir. 2005) (quotation omitted)).

Attempts by insureds to recover attorney's fees in such actions are generally considered "futile."

*Harriprashad v. Metro. Prop. & Cas. Ins. Co.*, No. 09-CV-3105 (ENV)(ALC), 2011 WL 6337699,

at *3 (E.D.N.Y. Nov. 17, 2011), *report and recommendation adopted by* 2011 WL 6370039

(E.D.N.Y. Dec. 19, 2011) (dismissing claim for attorney's fees and denying leave to amend the

complaint).  *See also Woodworth v. Erie Ins. Co.*, No. 05-CV-6344CJS, 2009 WL 1652258, at *5

(W.D.N.Y. Jun. 12, 2009), *modified on other grounds*, 2009 WL 3671930 (W.D.N.Y. Oct. 29,

2009) (denying motion for leave to plead a claim for attorney's fees "on the grounds of futility").

       A "narrow exception" to this rule arises in cases under liability insurance policies

when an insurer acts in bad faith by casting a policyholder "in a defensive posture by its insurer in

a dispute over the insurer's duty to defend." *Liberty Surplus*, 420 F.3d at 67.  In such cases, "it is

the contractual agreement to provide a defense that gives rise to the basis for attorneys' fees." *Id.*

at 69.  "The reasoning behind [this] exception is that any insurer's duty to defend extends to an

action brought by the insurer to free itself from the covering event." *Id.* at 67 (citations omitted).

Accordingly, because this action did not involve a liability policy, the *Mighty Midgets* exception

does not apply.

    **B.**    **There Is No Basis for Allowing An Exception to The**
          **American Rule In This Case**

       Plaintiffs argue that the decision in *Sukup v. State*, 19 N.Y.2d 519, 521 (1967), in

effect, creates a second exception that would allow attorney's fees to be recovered outside the

liability insurance/duty to defend context whenever an insured makes an "extraordinary showing"

of bad faith by the insurer, notwithstanding that there is no allegation of bad faith in the pleadings, no evidence of bad faith in the record, and no finding by the Court of bad faith by John Hancock.

Plaintiffs misread *Sukup*. The decision does not create a general rule allowing recovery of attorney's fees by an insured whenever an insurer acts "unreasonably". The *Sukup* case arose when the State Insurance Fund denied coverage under a worker's compensation policy. *See id.* at 520. The Court of Appeals reversed the lower court's award of attorney's fees, holding that although the carrier wrongly denied coverage, there was no reason to depart from the well-settled rule that each party is responsible for their own fees in a coverage dispute. *See id.* at 522. The Court held:

> Nor is there any evidence in the record on which a finding of bad faith on the part of the State Fund could reasonably be predicated. It is not a breach of contract per se for a carrier to deny that its policy covers a particular event and the assertion of such noncoverage raises a question which, in the course of workmen's compensation adjudication, is to be resolved by the Workmen's Compensation Board.

> Here it was resolved against the carrier and in favor of the claimant, the insured, but essentially all this amounts to is an adverse legal controversy between the carrier and insured for which no liability for the legal fees of one party would be chargeable to the other in the absence of some extraordinary showing.

*See id.* at 521. The lower Court had awarded attorney's fees based on the decision in *Brassil v. Maryland Casualty Compnay*, 210 N.Y. 235 (1914), which is a liability insurance case. *See Sukup*, 19 N.Y.2d at 523. The *Sukup* dissent, moreover, observed that there were allegations that the company violated its duty to defend the insured at the Worker's Compensation board hearing. *See id.* at 525.

No New York Court of Appeals decision has since applied *Sukup* outside the liability insurance/duty to defend context to allow an award of attorney's fees. Indeed, ten years later, the Court of Appeals reaffirmed the American Rule in *Mighty Midgets* without adding a general bad faith exception, and more recently in *New York University* held that an insured may not

recover its fees when it brings a coverage action.  (*See supra* at pp. 5-6.)  Although there are some

intermediate state trial and appellate courts that cite *Sukup* in dicta as authority for the existence of

a "bad faith" exception allowing attorney's fees, no appellate court in New York has ever upheld

such an award in a life insurance case or a first party insurance case.  *Sukup* is almost invariably

cited as applying in liability insurance/duty to defend cases when the insured has commenced the

action and does not fall within the *Mighty Midgets* exception; it is either cited as authority against

the award of attorney's fees, or the issue is not reached because bad faith was not present.[2]

In *Employers Mutual Casualty Company v. Key Pharmaceuticals*, 75 F.3d 815 (2d

Cir. 1990), the Second Circuit held that an award of attorney's fees under *Sukup*, like *Mighty

Midgets*, depended on the existence of the duty to defend found in a liability income policy:

> Under New York law, it is "well settled that an insured cannot
> recover his legal expenses in a controversy with a carrier over
> coverage, even though the carrier losses the controversy and is held
> responsible for the risk."  *Sukup v. State*, 19 N.Y.2d 519, 522, 281
> N.Y.S.2d 28, 31, 227 N.E.2d 842, 844 (1967) (citations omitted).  In
> *Aetna Casualty & Surety Co. v. Dawson*, 84 A.D.2d 708, 444
> N.Y.S.2d 10 (1st Dep't 1981), *aff'd*, 56 N.Y.2d 1022, 453 N.Y.S.2d
> 683, 439 N.E.2d 398 (1982), the court resolved the apparent tension
> between *Mighty Midgets* and *Sukup* and denied attorney's fees to the
> policyholder. Although the *Dawson* court found that the policyholder
> in fact was not put in a defensive posture, the court also said that *a
> "second, but more fundamental, reason" to deny attorney's fees
> was that the insurer's duty to defend was not an issue.*  *Dawson*, 84
> A.D.2d at 709, 444 N.Y.S.2d at 12.  *Mighty Midgets* does no
> more than carve out a narrow exception to the general rule that litigation
> costs are not recoverable by a winning litigant; that exception arises
> when a policyholder has been cast in a defensive posture by its
> insurer in a dispute over the insurer's duty to defend.  *Id. See also
> Puritan Ins. Co. v. Eagle Streamship Co., S.A.*, 779 F.2d 866, 872-73
> (2d Cir. 1985); *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d
> 308, 639 N.Y.S.2d 283, 662 N.E.2d 763, (1995)(punitive damages
> will not be awarded for breach of contract, unless necessary to deter
> gross conduct).  *Since the duty to defend is not an issue in this case,*

---

[2] *See, e.g., Liberty Surplus*, 420 F.3d at 70; *Cowan v. Codelia*, 50 Fed. App'x 36, 37-38 (2d Cir. 2002) (denying
attorney's fees because the insurer had an arguable basis for denying coverage); *Wurm v. Commercial Ins. Co. of
Newark, N.J.*, 308 A.D.2d 324, 329-30, 766 N.Y.S.2d 8, 13 (1st Dep't 2003) (denying attorney's fees despite
determination that insurer had breached a disability policy).

> *we conclude that under New York law, attorney's fees cannot be awarded.*

75 F.3d at 824 (emphasis added).  In *Aetna Casualty and Surety Company v. Dawson*, 84 A.D.2d 708, 709, 444 N.Y.S.2d 10, 12 (1st Dep't 1981), *aff'd*, 56 N.Y.2d 1022, 453 N.Y.S.2d 683, 439 N.E.2d 398 (N.Y. 1982) ("*Dawson*"), cited by the Second Circuit, the Appellate Division refused to allow recovery of attorney's fees in a dispute over uninsured motorist coverage when the duty to defend was not at issue.  In the absence of the duty to defend the Appellate Division held the insurance coverage dispute was a garden variety breach of contract dispute in which attorney's fees could not be recovered.  *See id.  See also Liberty Surplus*, 420 F.2d at 67; *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 624-25 (2d Cir. 2001).

Plaintiffs cite two outlier trial court decisions.  In *New England Mutual Life Insurance Co. v. Johnson*, 155 Misc. 2d 680, 681-82, 589 N.Y.S.2d 736, 736-37 (Sup. Ct. N.Y. Cty. 1992) (Pl. Mem. at 6), a life insurer sought to rescind a life insurance policy after learning that the insured had AIDS.  The Court held that because New England Mutual cast its insured into a defensive position by commencing a declaratory judgment action, it fell within the exception recognized in *Mighty Midgets*.  *See id.* at 684, 589 N.Y.S.2d at 738-39.  That rationale is certainly called into question by *Dawson, Employers Mutual* and *New York University*, but is, in any case, not relevant here because Plaintiffs commenced the action.  Moreover, *New England Mutual* was decided after *Dawson*, which it did not address, but before *Employers Mutual* and before *New York University*.

The extreme facts of *New England Mutual* also render the case inapposite.  The court found the insurer demonstrated a "gross" disregard for its policy obligations by conducting an "investigation to find a bogus basis for disclaiming" coverage, constituting "discrimination both on the basis of disability and marital status".  *New England Mutual*, 155 Misc. 2d at 684-85, 589 N.Y.S.2d at 739.

Here, John Hancock determined the Policy lapsed due to nonpayment of premium after receiving bad checks from Plaintiffs' assignor, Ashkenazi. (ECF No. 233 at 7.) John Hancock did not try to "escape its obligation" by violating the law as the insurer did in *New England Mutual*. 155 Misc. 2d at 684, 589 N.Y.S.2d at 739. An insurer is permitted to assert defenses based on the insured's conduct that may have violated the policy terms. *See id.* There is no other case besides *New England Mutual* applying the rule in a life insurance policy dispute – notwithstanding the hundreds of such cases filed every year.

*Exim, Inc. v. Innogarant, LLC*, No. 10 civ 5271 (CM), 2011 WL 240130 (S.D.N.Y. Jan. 19, 2011), the second case cited by Plaintiffs (Pl. Mem. at 6-7), was decided on a motion for a default judgment. The Court awarded attorney's fees to an insured against an insurer who failed to appear and was found by the court to have taken positions "frivolous and contrary to the plain wording of the Policy". *Id.* at *6. The Court held that "[a]n award of attorneys' fees is specifically requested in the Complaint and should be awarded to Plaintiff in view of [the insurer's] default." *Id.* at *5. The claim denial "was in bad faith, with the sole purpose to delay and/or avoid payment on a valid and legitimate claim under the Policy." *Id.* at *7.[3]

In contrast to these two cases, courts repeatedly hold that there is no basis to make an award of attorney's fees where the insurance company simply got it wrong. In *Liberty Surplus*, the Second Circuit ruled against the insurer holding the liability policy language was "unambiguous", but declined to award attorney's fees. 420 F.3d at 70. In *Amoco Oil Company v. Hartford Accident & Indemnity Company*, No. 93 Civ. 7295 (SS), 1996 WL 455015, at *3-5 (S.D.N.Y. Aug. 12, 1996), the Southern District of New York held that the insurance policy at

---

[3] In *Federal Deposit Insurance Corp. v. National Surety Corp.*, 425 F. Supp. 200, 204 (E.D.N.Y. 1977) (Pl. Mem. at 7), decided before *Dawson*, *Employers Mutual* and *New York University*, the court denied an insurer's motion for summary judgment seeking dismissal of the insured's claim for attorney's fees, holding that there were issues of fact for trial. The court did not award fees. Moreover, unlike the Plaintiffs in this action, the plaintiff in *Federal* pled a claim for attorney's fees in its complaint and alleged therein that the defendants acted "in bad faith and in gross disregard of their obligations under the bonds." *Id.* at 202-03.

-10-

issue was not ambiguous and that the only reasonable interpretation of the policy was in favor of coverage, but the court declined to find bad faith and declined to make an award of attorney's fees. Similarly, in *Wurm v. Commercial Insurance Company of Newark, N.J.*, the First Department declined to award attorney's fees because, although the insurer had breached the policy, it had an arguable basis for denying coverage. *See* 308 A.D.2d at 329-30, 766 N.Y.S.2d at 13.

### C.    There Is No Bad Faith Here

An insured must make an "extraordinary showing" of bad faith, and establish a "gross disregard for [the insurer's] policy obligations," and "more than an arguable difference of opinion between carrier and insured over coverage." *Sukup*, 19 N.Y.2d at 521-522. The Second Circuit has held that "gross disregard" and "more than an arguable difference" are two separate requirements under *Sukup* and a plaintiff must prove both of them:

> The presumption against bad faith liability can be rebutted only by evidence establishing that the insurer's refusal to defend was based on 'more than an arguable difference of opinion' *and* exhibited 'a gross disregard for its policy obligations.'

*Hugo Boss*, 252 F.3d at 625 (quoting *Sukup*, 19 N.Y.2d at 521) (emphasis added). Moreover, "the presumption cuts powerfully against the insured." *Id*. at 615.

### 1.    John Hancock Did Not Act in Bad Faith

The Court in effect has already determined that John Hancock's position throughout the litigation was arguable and not taken in bad faith when it stated: "[t]here is merit to both sides" of the incontestability issue. (ECF No. 233 at 8.)

John Hancock's alternative defense that the Policy lapsed because it did not receive the default amount by May 12, was not in bad faith. The November 29 Order summarized John Hancock's position as follows:

> In John Hancock's view, the Trust's May 9, 2008 checks initially prevented the policy from lapsing at the end of the grace period three days later. When, however, those checks bounced on June 3rd, the credits to the account were "reversed," as if they had never existed.

> Thus, although the facts giving rise to the lapse did not arise until June 3, 2008, the lapse was retroactively effective to May 12, 2008. Plaintiffs' payment of $285,000 on May 27th was of no consequence because, by then, the policy had already lapsed.

(*Id.* at 11-12.)  On June 3, the same day it sent the notice terminating the policy, John Hancock sent a letter telling Plaintiffs:

> Please submit a replacement check in the envelope provided within 10 days.  Failure to provide a replacement check could result in the policy lapsing for non payment and termination of contract.

(ECF No. 229-2, Carli Opp. Dec. ¶ 34.)  John Hancock argued that this was a form letter that did not extend the grace period: "The letters state the customer should 'submit a replacement check within 10 days'; they do not say that if a Policy is already in default and scheduled to lapse that John Hancock will extend the grace period for ten days."  (*Id.* ¶ 5.)  Plaintiffs argued that this letter created an equitable estoppel and the Court accepted Plaintiffs' interpretation.  The Court's construction of the letter as an "offer" accepted by Plaintiffs did not turn a legitimate dispute over the legal effect of an extra contractual letter into a "gross disregard for its policy obligations."

> *Sukup* held that a dispute over interpretation, like this one, is not bad faith:
>
> The arguable case is this: In the insured's declaration forming part of the policy as to the "location of All Business Operations, by Town or City, with Street and Number", the claimant answered "11 Pike Street, NY City & elsewhere in NYS".  There is proof that the business of insured in New York was "real estate" at 11 Pike Street where he owned a building, containing stores and apartments.  He also had a farm in Rock Rift, Delaware County.  The workmen's compensation claim arose from the death of insured's employee on the farm on January 25, 1958.

19 N.Y.2d at 522.  Defendant argued that the parties did not intend to cover the accident in Delaware County; it was only intended to cover accidents at Pike Street where the business was located.  The lower court rejected defendant's argument and held it was covered based on the policy's plain language, "& elsewhere in NYS".  On appeal, the dissent emphasized that no reasonable person could construe "elsewhere in New York State" as the defendant had.  *See id.* at

525.  Nevertheless, the majority held that the dispute over interpretation did not rise to the level of

bad faith because the disagreement was at least arguable.  *See id.* at 522.  The same thing happened

here.  This is the essence of an arguable difference of opinion.  Characterizing a breach of contract

in bad faith terminology does not entitle an insured to recover attorney's fees.

   Plaintiffs also argue that John Hancock acted in bad faith because John Hancock's

"own records" show that Plaintiffs' account balance was sufficient to keep the Policy in force and

that a reasonable carrier "would surely look at its own records to see what that account balance

was" and  "would have seen that the account value was enough."  (Pl. Mem. at 9.)  The point is not

that John Hancock did not know about the money.  The point is the payment was not credited

because it did not arrive in time.  The suggestion John Hancock's "own records" (i.e. the chart

Plaintiffs created in their memorandum) reflected a $186,713.88 account value in Plaintiffs'

account as of June 3 which was "more than enough" to cover Ashkenazi's bounced checks (Pl.

Mem. at 8) is beside the point.  As of June 3, 2008 (the date John Hancock processed the reversal

of Ashkenazi's checks effective as of May 9), Plaintiffs' $275,000 May 27 payment went into a

"suspense account" for refunding to Plaintiffs because it had been received after May 12, the last

day of the grace period and the effective date of the lapse.

   The premium receipts sent by John Hancock notify policy owners that dishonored

checks will be treated as void.  (ECF No. 225-58, Carli Dec. Ex. 1 ("Any receipt for payment made

is subject to the condition that it shall be void if any check or draft . . . is dishonored for any reason

and that no such check or draft shall constitute a payment to the Company, whether or not the

amount due, or any part thereof, has been advanced or credited to the Company.").)  If no

additional funds are received between the effective date of a reversal and the last day of the

contractual grace period, a Policy will lapse.  (*Id.* ("The policy will continue in force only if actual

premiums paid…are sufficient to provide for all monthly charges when due.").)  Ashkenazi's

$127,000 payment was made on or about May 9, approximately 3 days before the expiration of the

grace period.  (ECF Nos. 225-57 & 225-59, Carli Dec. ¶ 27 & Ex. 2.)  When his checks were returned on June 3, they were treated as void per the premium receipt sent to Ashkenazi.  (ECF No. 225-58, Carli Dec. Ex. 1.)  The reversal of his checks on the PolicyLink System caused the Policy to lapse effective as of May 12, the last day of the grace period.  (ECF No. 225-57, Carli Dec. ¶ 31.)

### 2.   Plaintiffs Never Alleged Bad Faith

An insured's failure to allege bad faith in its complaint weighs against a finding that an insurer acted in bad faith.  *See Fulton Boiler Works, Inc. v. Am. Motorists Ins. Co.*, No. 5:06-CV-1117 (GTS/DEP), 2010 WL 1257943, at *8 (N.D.N.Y. Mar. 25, 2010) (denying insured's request for attorney's fees where "Plaintiff has failed to allege (let alone introduce evidence establishing) that Defendants' actions rose to the level of bad faith."); *Liberty Surplus*, 420 F.3d at 70 (affirming district court's denial of insured's claim for attorneys fees, in part because "[Plaintiff] never alleged bad faith in its complaint").  Here, even after six iterations of the Complaint filed in this action, there remains no allegation of bad faith by John Hancock.  (ECF Nos. 1, 19, 42, 59, 110, 152.)[4]

## II.   ATTORNEY'S FEES ARE NOT RECOVERABLE AS "CONSEQUENTIAL DAMAGES" AS A MATTER OF LAW

Attorney's fees are not "consequential damages."  *See Brooklyn 13th Street Holding Corp. v. Nextel of N.Y., Inc.*, No. 11-CV-1048 (CBA)(RLM), 2011 WL 6945862, at *5 (E.D.N.Y. Dec. 30, 2011) ("Plaintiff does not cite a single case, nor could it, suggesting that litigation costs should be considered as part of consequential damages.  '[U]nder the American rule, legal fees are not ordinarily recoverable as an element of damages.'") (quotation omitted).  Plaintiffs point out

---

[4]  The Complaint also does not request attorney's fees in the two counts asserted against John Hancock – Count IV for Negligent Misrepresentation and Count V for Declaratory Judgment.  (ECF No. 152 at pp. 20-24.)  The Complaint does separately request attorey's fees as part of the relief sought in each claim asserted against each of the other defendants.  Plaintiffs should not be permitted to assert a claim that was not pled.

that the New York Court of Appeals' 2008 decisions in *Bi-Economy Market, Inc. v. Harleysville Insurance Company of New York*, 10 N.Y.3d 187 (N.Y. 2008), and *Panasia Estates, Inc. v. Hudson Insurance Company*, 10 N.Y.3d 200 (N.Y. 2008), opened the door for insureds to recover foreseeable "consequential damages" from an insurer where there has been a bad faith breach of contract.  (Pl. Mem. at 10.)  These cases do not support the recovery of attorney's fees.  First, there was no bad faith breach here so these cases do not apply.  (*See* Point I.C, *supra.*)  Second, as Plaintiffs concede, *Bi-Economy* and *Panasia Estates* do not hold under New York law that "consequential damages" includes attorney's fees.  (Pl. Mem. at 3.)  Plaintiffs simply wish to preserve their appellate rights in the event there is a change in law while this case is pending.  (*Id.*)  Third, subsequent decisions interpreting *Bi-Economy* and *Panasia Estates* have held that attorney's fees are not recoverable:

> Nothing in *Bi-Economy* or any post-*Bi-Economy* authority cited by the parties suggests that the New York Court of Appeals intended through its *Bi-Economy* decision to alter in the insurance context the traditional American rule that each party should bear its own attorneys' fees. *See, e.g., Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 21, 416 N.Y.S.2d 559, 389 N.E.2d 1080 (1979) ("[i]t is the rule in New York that [an award of attorneys' fees] may not be had in an affirmative action brought by an insured to settle its rights"); *Authelet v. Nationwide Mut. Ins. Co.*, 2008 WL 4771700, *4 (N.Y.Sup.Ct.2008) (rejecting argument that *Bi-Economy* authorizes claim for attorneys' fees as consequential damages). *See also Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 177 (2d Cir.2006) ("[u]nder New York law, an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy") (internal quotation omitted).

*Woodworth,* 2009 WL 1652258, at *5 (alteration in original) (denying leave to amend complaint to request attorney's fees based on *Bi-Economy*).  *See also Harriprashad*, 2011 WL 6337699, at *2-3 (granting leave to amend complaint to assert "special damages" under *Bi-Economy* and *Panasia*, but dismissing a claim for attorney's fees as "futile"); *Handy & Harman v. Am. Int'l Group, Inc.*, No. 0115666/2007, 2008 WL 3999964, at *6 (Sup. Ct. N.Y. Cty. Aug. 25, 2008) (citing *New York*

-15-

*Univ.*, 87 N.Y.2d at 324) (holding claim for "consequential damages" was sufficiently pled but dismissing claim for attorney's fees because of the "well-settled [rule] that an insured 'may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy.'").

　　　　　The two cases cited by Plaintiffs from the Northern District of New York (Pl. Mem. at 12) did not award attorney's fees and did not hold that they are consequential damages.  The court in those cases simply declined to dismiss the plaintiffs' claims for attorney's fees at the pleading stage, and *Chernish* specifically stated that it was premature to decide the issue.  *See Chernish v. Mass. Mut. Life Ins. Co.*, No. 5:08-CV-0957 (GHL), 2009 WL 385418, at *5 (N.D.N.Y. Feb. 10, 2009); *Quick Response Commercial Div., LLC*, No. 1:09-cv-00651 (GLS/RFT), 2009 WL 3334600, at *2 (N.D.N.Y. Oct, 14, 2009).

　　　　　Furthermore, consequential damages may not be awarded under *Bi-Economy* and *Panasia Estates* where bad faith has not been alleged and proven.  *See Bi-Economy*, 10 N.Y.3d at 194; *Panasia Estates*, 10 N.Y.3d at 203.  "Cases have virtually uniformly held that, after *Panasia Estates* and *Bi-Economy*, a plaintiff simply 'cannot sustain a claim for consequential damages without showing that defendants lacked good faith."  *Goldmark, Inc. v. Catlin Syndicate Ltd.*, No. 09-CV-3876 (RRM)(RER), 2011 WL 743568, at *3 (E.D.N.Y. Feb. 24, 2011) (collecting cases). *See also Harriprashad*, 2011 WL 6337699, at *2 ("Generally, an insured cannot recover additional damages from an insurer beyond the policy limits, but New York courts make an exception when there is a showing of bad faith."); *Haym Solomon Home For The Aged, LLC v. HSB Group, Inc.*, No. 06-CV-3266(JG)(JMA), 2010 WL 301991, at *5 n.1 (E.D.N.Y. Jan. 20, 2010) (noting that *Bi-Economy* is "not relevant" where the plaintiff "does not allege that it suffered any damages as a result of the breach of bad faith apart from those suffered as a result of the breach of contract."); *Handy & Harman*, 2008 WL 3999964, at *4 ("While ordinarily damages arising from a breach of contract will be limited to the contract damages necessary to redress the wrong . . . in the insurance

contract context, an insured may pursue a claim for consequential damages . . . based on defendants' claimed breach of the covenant of good faith."). Here, Plaintiffs did not make any allegations of bad faith, the Court did not consider such a claim, nor did it enter any findings of bad faith.

Finally, a plaintiff may not recover consequential damages unless it establishes that such damages were reasonably contemplated by the parties as the probable result of a breach at or prior to the time of contracting. *See Bi-Economy,* 10 N.Y.3d at 191; *Panasia Estates*, 10 N.Y.3d at 203. "To determine whether consequential damages were reasonably contemplated by the parties, courts must look to 'the nature, purpose and particular circumstances of the contract known by the parties . . . as well as 'what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted to the plaintiff reasonably to suppose that it assumed, when the contract was made.'" *Bi-Economy,* 10 N.Y.3d at 193 (quotation omitted). Plaintiffs offer no evidence of what the parties contemplated at the time of contract. Moreover, the parties would not reasonably have contemplated consequential damages in 2005 when the Policy was issued because *Bi-Economy* and *Panasia Estates*, which according to Plaintiffs "changed the landscape" by authorizing an insured's recovery of foreseeable consequential damages for bad faith, were not decided until February 2008. (Pl. Mem. at 10.) Plaintiffs' argument as to what John Hancock "certainly intended" and "must have contemplated" is unsupported speculation. (*Id.* at 12.)

## III.   PLAINTIFFS' MOTION SHOULD ALSO BE DENIED BECAUSE PLAINTIFFS FAILED TO PROVIDE AN AMOUNT OR ESTIMATE OF FEES INCURRED

Pursuant to Rule 54, a motion for attorney's fees "must . . . state the amount sought or provide a fair estimate of it." Fed. R. Civ. P. 54(d)(2)(B)(iii). *See also Sinclair v. City of Rochester*, No. 07-CV-6277, 2007 WL 3047096, at *2 (W.D.N.Y. Oct. 18, 2007); *Iannone v. Frederic R. Harris, Inc.*, No. 93 Civ. 4865 (JGK) (JCF), 1997 WL 12809, at *1 (S.D.N.Y. Jan. 13, 1997). Here, Plaintiffs have failed to provide this basic information. John Hancock is left in the

dark as to the amount Plaintiffs are seeking.  Plaintiffs' motion should also be denied on this

ground.[5]

## CONCLUSION

For the reasons explained above, defendant John Hancock respectfully requests that the

Court deny Plaintiffs' Motion for Attorney's Fees.

Dated: New York, New York
      March 21, 2012

                                     KELLEY DRYE & WARREN LLP


                            By: s/s Neil Merkl _____
                                  Neil Merkl
                                  Eric B. Post
                            101 Park Avenue
                            New York, New York 10178
                            Tel:  (212) 808-7800
                            Fax:  (212) 808-7897
                            Email:  epost@kelleydrye.com
                                      nmerkl@kelleydrye.com
                            *Attorneys for Defendant John Hancock Life*
                            *Insurance Company (U.S.A.)*

---

[5] In the event the Court is inclined to permit Plaintiffs to prove their fees, it should order Plaintiffs to disclose all time and billing records relating to such fees and "the terms of any agreement about fees for the services for which the claim is made." *See* Fed. R. Civ. P. Rule 54(d)(2)(B)(iv); *see also Sinclair,* 2007 WL 3047096, at *3; *Iannone*, 1997 WL 12809, at *2.  John Hancock reserves the right to object to any fees sought.

-18-

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of March, 2012, I caused to be served the

attached DEFENDANT JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.)'S

MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' REQUEST FOR

ATTORNEY'S FEES in accordance with the Federal Rules of Civil Procedure, and/or the

Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the

following parties and participants:

Charles P. Randall, Esq.
1200 N. Federal Hwy., #3309
Boca Raton, FL 33432
Tel: (561) 750-5050
Fax: (561) 750-7272
Email:  chuck@cprattorney.com

*Counsel for Plaintiffs*


Michael Paneth, Esq.
Treff & Lowy PLLC
342 Bedford Avenue
Brooklyn, NY 11211
Tel: 718 599-3500
Fax: 718 387-6282
Email: mpaneth@trefflowy.com
*Counsel for Defendants Global Life*
*Settlements, Inc. and Joel Eckstein*

Brian J. Green, Esq.
Harvey A. Feintuch, Esq.
Edwards Angell Palmer & Dodge LLP
750 Lexington Avenue
New York, NY 10022
Tel: (212) 912-2755
Fax: (888) 325-9621
Email: bgreen@eapdlaw.com
        hfeintuch@eapdlaw.com
*Counsel for Defendant Cambridge Life*
*Settlements, LLC*


Dated:  March 21, 2012


    s/s Neil Merkl
       Neil Merkl